United States District Court
Southern District of Texas
**ENTERED**
November 28, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | § | |
|---|---|---|
| IN RE BWM81 | § | CIVIL ACTION NO. 3:23-cv-00172 |
| | § | |

### MEMORANDUM AND RECOMMENDATION

Before me is the Motion of Claimant Callan Marine Ltd. to Dismiss Claimant Antonio Alaniz's Crossclaim. Dkt. 37. For the reasons identified below, I recommend that the motion be **DENIED**.

### BACKGROUND

Antonio Alaniz ("Alaniz") alleges that he was working for Callan Marine Ltd. ("Callan Marine") on October 21, 2020 as a seaman and crane operator on a dredging project in coastal waters when he sustained significant injuries as a result of being hit by a batch of pipes.

Alaniz originally filed suit in Texas state court against Callan Marine. He subsequently added defendants to the state court case, claiming those entities are also responsible for his injuries. Those companies are J.M. Davidson, Ltd. ("J.M. Davidson"), Peninsula Marine, Inc. ("Peninsula Marine"), and Brown Water Marine Service, Inc. ("Brown Water").

On June 9, 2023, Brown Water initiated this proceeding by filing a Verified Complaint for Exoneration from or Limitation of Liability. Dkt. 1. In the limitation action, Alaniz timely filed a claim against Brown Water and crossclaims against J.M. Davidson, Peninsula Marine, and Callan Marine. With respect to Callan Marine, Alaniz has asserted four claims: (1) negligence; (2) unseaworthiness; (3) maintenance and cure; and (4) retaliatory discharge.

Callan Marine concedes—through its failure to address the retaliatory discharge claim—that the retaliatory discharge claim survives the pleading stage, but it asks that Alaniz's claims for negligence, vessel unseaworthiness, and maintenance and cure be dismissed under Federal Rule of Civil Procedure

12(b)(6). In short, Callan Marine argues that Alaniz "does not plead facts sufficient to raise to the level of creating a factual plausibility concerning the alleged acts or omissions of Callan Marine." Dkt. 37 at 2.

## LEGAL STANDARD

Rule 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has emphasized that the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (cleaned up).

In considering a motion to dismiss under Rule 12(b)(6), a plaintiff's well-pleaded factual allegations are taken as true, and the facts are construed in the light most favorable to the plaintiff. *See Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Generally speaking, a Rule 12(b)(6) motion to

dismiss "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation omitted).

## ANALYSIS

As a preliminary matter, I must address Alaniz's request that I strike Callan Marine's motion as untimely. The Galveston Division Rules of Practice expressly "provide parties an opportunity to amend their pleadings once before entertaining a Rule 12(b) motion to dismiss." S.D. TEX. GALVESTON DIV. R. 6. Those same rules further require "[t]he party seeking dismissal [to] inform the respondent, by letter, of the right to amend the pleadings . . ., specifying that the amended pleading must be filed within 21 days of the date of the letter." *Id.* Alaniz complains that although Callan Marine sent his counsel a letter indicating that it intended to file a motion to dismiss, the letter stated that Alaniz had only 14 days (as opposed to 21 days) to amend his Crossclaim.[1] For this error, Alaniz says I should not even consider Callan Marine's motion to dismiss. The pettiness of this argument is underscored by the fact that Alaniz never filed an amended pleading—not 14 days or 21 days after receipt of the notice letter—even though he was certainly entitled to do so under both the Galveston Division Rules of Practice and the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 15(a)(1)(B). Rather than a mechanical application of our local rules, I think a more flexible approach is appropriate. Callan Marine complied with the spirit of the rule by notifying Alaniz that it planned to file a motion to dismiss, and Callan Marine gave Alaniz the opportunity to file an amended pleading. I refuse to play a game of "Gotcha" and penalize Callan Marine for an innocent mistake. With that nickel-and-dime argument out of the way, I turn to the merits of Callan Marine's motion.

---

[1] The current version of the Galveston Division Rules of Practice took effect on February 21, 2023. The previous version did state that a party seeking to file a Rule 12(b) motion should give the opposing side 14 days to file an amended pleading before filing such a motion.

A.  **NEGLIGENCE**

Alaniz's first cause of action is for negligence under the Jones Act, general maritime law, or both.

Under the Jones Act, a "seaman injured in the course of employment" possesses a cause of action for his employer's negligence. 46 U.S.C. § 30104(a). The employer is held to a standard of ordinary prudence under the circumstances. *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). "A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury." *Id.*

Callan Marine argues that even "the most liberal reading of Alaniz's Crossclaim . . . provides no support whatsoever that could create a factual plausibility that Callan Marine" was negligent. Dkt. 37 at 4. I disagree. Alaniz alleges that Callan Marine employed him at all relevant times as a seaman and crane operator. Alaniz claims that on October 21, 2020, he and his fellow crew members were transferring pipes onto the BWM81 barge utilizing a crane barge and a crane. While stationed on the BWM81 barge, Alaniz says he was in the process of securing a batch of pipes when the crane operator reportedly "began prematurely lowering the batch of pipes without command or warning." Dkt. 32 at 3–4. The pipes struck Alaniz in the back, causing him to hit his chest on the corner of the barge before falling overboard. According to the Crossclaim, Alaniz "sustained severe and debilitating injuries to his chest, ribs, and lungs among other parts of his body." *Id.* at 4. Alaniz specifically alleges that Callan Marine was careless and negligent in the following respects:

- A. In failing to provide a safe work environment;
- B. In failing to properly inspect and maintain the vessels, equipment, and gear under its control;
- C. In failing to properly train and supervise the crew;
- D. In failing to properly coordinate with, and direct, the crane operator involved in the operations;
- E. In failing to assist ANTONIO ALANIZ;
- F. In failing to have and enforce safe policies and procedures for the work at hand;

>   G.  In failing to have and enforce proper man overboard procedures;
>   H.  In failing to have proper equipment to retrieve [] ANTONIO ALANIZ from the water;
>   I.  In failing to provide prompt and adequate medical attention to [] ANTONIO ALANIZ despite his ongoing symptoms and pain; and,
>   J.  Other acts of negligence as proven at time of trial

*Id.* at 6.

All Alaniz is required to do at this preliminary pleading stage is to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a low hurdle. Alaniz has pled enough factual content to allow the reasonable inference that Callan Marine is liable under the Jones Act. Sure, some of the items contained in Alaniz's laundry list of negligent conduct are, unquestionably, legal conclusions without any factual support. These include statements such as "[o]ther acts of negligence as proven at time of trial." Dkt. 32 at 6. Nonetheless, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Alaniz, as I must, I conclude that Alaniz's Jones Act negligence claim satisfies Rule 12(b)(6). *See Hinojosa v. Callan Marine Ltd.*, No. 3:22-cv-00233, 2022 WL 16857013, at *2 (S.D. Tex. Nov. 10, 2022) (refusing to dismiss similarly-pleaded Jones Act negligence claims on a Rule 12(b)(6) motion to dismiss). If Callan Marine needs additional "details as to the specific manner in which [it] is claimed to have been negligent, [Callan Marine] can obtain them under the provisions for discovery." *Century '21' Shows v. Owens*, 400 F.2d 603, 607 (8th Cir. 1968) (quotation omitted).

**B.  UNSEAWORTHINESS**

Independent from a Jones Act claim, a seaman may claim his injuries were caused by the unseaworthiness of a vessel under general maritime law. *See Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 498 (1971) ("[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence.").

"Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be accident-free." *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1432–33 (5th Cir. 1988) (cleaned up). A vessel is deemed unseaworthy "only if it presents an unreasonable risk of harm to the seaman." *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007). The two elements of an unseaworthiness claim are: (1) the vessel or the vessel's equipment was not "reasonably suited for the purpose or use for which they were intended," and (2) "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

Alaniz alleges that Callan Marine "operated, controlled, and/or manned" the BWM81 barge on the date he was injured. Dkt. 32 at 7. Alaniz avers that the BWM81 barge was unseaworthy for the following reasons:

> A.   The vessels had an incompetent Captain and/or crew;
> B.   The vessel lacked safe policies and procedures for loading and moving pipe cargo;
> C.   The vessels lacked a stokes litter;
> D.   The vessel lacked adequate safety equipment and gear to protect the crew; and,
> E.   Other unseaworthy conditions as proven at time of trial.

*Id.* These factual allegations provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

It is undisputed that Brown Water owned the BWM81 barge on the date of the accident. Callan Marine argues that the unseaworthiness claim is fatally defective because Callan Marine did not own the BWM81 barge, the vessel on which Alaniz was stationed when he was injured. This argument is a non-starter. "The appropriate defendant in an unseaworthiness case is the person who had operational control of the ship at the time the condition was created or the accident occurred." *Delozier v. S2 Energy Operating, LLC*, 491 F. Supp. 3d 149, 158–59 (E.D. La. 2020) (quoting 1 Thomas J. Schoenbaum, *Unseaworthiness: Elements*

and *Defenses*, ADMIRALTY & MAR. L. § 6:25 (6th ed.)); *see also Daniels v. Fla. Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963) ("The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel."). Alaniz's allegation that Callan Marine "operated, controlled, and/or manned" the BWM81 barge is enough, at this early juncture, to maintain a claim for vessel unseaworthiness against Callan Marine.

### C. MAINTENANCE AND CURE

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." *Meche v. Doucet*, 777 F.3d 237, 244 (5th Cir. 2015) (quotation omitted). "Maintenance is a daily stipend for living expenses, whereas cure is the payment of medical expenses." *Id.* (quotations omitted). "Generally, an employer must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quotation omitted). The obligation of a shipowner to pay maintenance and cure is "deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment." *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968). "A Jones Act employer who unreasonably rejects a maintenance and cure claim becomes liable for compensatory damages, and employers who have not only been unreasonable but have been more egregiously at fault, are liable for punitive damages and attorney's fees." *In re 4-K Marine, L.L.C.*, 914 F.3d 934, 938 (5th Cir. 2019) (cleaned up).

According to the Crossclaim, Callan Marine "has unreasonably, arbitrarily, willfully and capriciously refused to promptly pay full maintenance and cure benefits to [Alaniz]." Dkt. 32 at 8. As a result, Alaniz contends that Callan Marine is liable for such maintenance and cure benefits, compensatory damages (that is,

"damages for prolongation or aggravation of injuries, pain and suffering, and additional expenses"), punitive damages, and attorney's fees. *Id.*

Callan Marine asserts that Alaniz has failed to "plead facts sufficient to rise to the level of creating a factual plausibility with respect to his allegation that Callan Marine has 'unreasonably, arbitrarily, willfully and capriciously refused to promptly pay full maintenance and cure benefits.'" Dkt. 37 at 6–7 (quoting Dkt. 32 at 8). I disagree. Alaniz has pled factual content that allows the reasonable inference that Callan Marine is liable for maintenance and cure benefits—Alaniz has stated that (i) Callan Marine employed him; (ii) he was injured while fulfilling his duties on a vessel; and (iii) he incurred medical expenses. Focusing on whether Callan Marine willfully failed to honor its maintenance and cure obligation, Alaniz expressly claims in the Crossclaim that Callan Marine "failed to pay adequate maintenance and cure *after* being so advised of [Alaniz's] needs." Dkt. 32 at 8 (emphasis added). Based on these allegations, I find that Alaniz has pleaded enough facts to state a claim for relief that is plausible on its face, and to give Callan Marine fair notice of that claim. Dismissal of Alaniz's claim for maintenance and cure would be premature at this juncture.[2]

## CONCLUSION

For the reasons stated above, I recommend that the Motion of Claimant Callan Marine Ltd. to Dismiss Claimant Antonio Alaniz's Crossclaim (Dkt. 37) be **DENIED**. Alaniz has properly pleaded facts giving rise to his claims for affirmative relief and must be afforded an opportunity to pursue his claims for negligence, unseaworthiness, and maintenance and cure through discovery.

---

[2] Callan Marine also suggests that the maintenance and cure claim fails because Alaniz admits that he returned to work approximately five months after the accident. As Alaniz correctly points out, his decision to return to work "does not relieve Callan Marine of its duty to pay for the medical treatment [he] received in the five months before he returned to work and to reimburse him for the out-of-pocket medical expenses he previously incurred." Dkt. 38 at 12.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this  28th  day of November 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE